3-090-440 Brent Walker, a minor, et al., Appolin, by Theodore Jarvis, v. Lockport Township, et al., Appolese, by Allison, Harrington, Anthony Ricciabato, and Edward Dunn. Mr. Jarvis, good afternoon. Good afternoon. May it please the court, good afternoon, counsel. Ms. Clark, if I could ask you to please let me know when there's ten minutes so I can have a few minutes left to reply. You have five minutes of rebuttal. Oh, okay. Anyway, yes. Oh, thank you. Good. We're here today to deal with the dismissal with prejudice of a complaint that we'd filed on behalf of a minor plaintiff who was involved in a single vehicle accident back in September of 2006 when the vehicle went out of control due to a very deteriorated roadway in the vicinity of Lockport, Illinois. The question before us is one of the duty of maintenance of the roadway in question. And you may have recalled from the briefs in the record, as you saw, the original complaint had been brought against the Lockport Township as a defendant in the case. A motion to dismiss was heard with regards to that, was not granted, denied. But after the court's rulings and remarks in that regard, an amended complaint was filed adding two additional municipal defendants to the case along with the individual who was driving the car who had settled out. And the issues now before the court, as I believe as in the original complaint, I think focus primarily on the questions that arise from the provisions of the Illinois Highway Code in combination with the provisions of the Illinois and Michigan Development Act, particularly with regards to the responsibilities of Lockport Township, who we perceive to be the entity primarily responsible for the maintenance of this roadway. Was this road ever dedicated on a plat? Ever? I mean, my understanding is it's just the towpath. It is the towpath. The plats that we've been able to find that describe it as a, quote, public reserve. As far as the city of Lockport is concerned, it nowhere appeared in any of their subdivision plats or any of their records as being dedicated to the city of Lockport, as you would normally expect if the traditional means of dedication of a roadway were followed, and they were not joined in the original complaint. The issue with regards to the city of Lockport arose from the arguments made by Lockport Township in the original motion to dismiss that the interpretation of one of the provisions of the Illinois Highway Code would say that the roadway should be considered as part of the municipal road system as opposed to the township road system, and that's basically the reason why they were added as a defendant. But no, there was no plat of dedication, no village ordinance, no resolution or act of any public or municipal body to say, to adopt or incorporate or acknowledge responsibility for this particular road. It was simply through the exhibits that were provided, I believe, by Lockport Township Park District in dealing or addressing the issues of their ownership of this point in the roadway, where it was revealed that there had been this survey made in their records at some point in time when they defined their boundaries, which are adjacent to the roadway, that showed that this was a public reserve that... Wasn't it a state park? I mean, isn't that AM Canal property considered a state park property now? It is under the responsibility of the Illinois Department of Natural Resources to redevelop. Which is a state agency? It is a state agency, but the question as it really gets to focus in our case is whether or not they have been given exclusive jurisdiction over this point in the roadway. And it's been my contention throughout this case that they have not. There is no significance because of the provisions in the Illinois Highway Code that say that the Illinois Highway Code provisions apply to all the highways in the state unless exclusive jurisdiction for the roadway was given to a department of the state or a state agency, as you pointed out. But their provisions in the I&M Development Act that basically say no, it's not exclusive jurisdiction. Well, okay, but Justice O'Brien asked you about whether this towpath that we're talking about you refer to as Canal Road. But this has never been dedicated. There's no green sign out there that says Canal Road, right? Nobody's ever dedicated this as Canal Road. It's a towpath along the canal in a state park that people drive on, right? It's basically a dirt or gravel road and to the north of Division Street I believe there is a sign that labels the section that runs along the same bank to the north as Canal Road. In order to get to this point where this accident happened, you have to weave your way through a little subdivision from the north to come in. And the road basically goes down about two or three miles and dead ends at some private property where, if I'm remembering correctly, the parcel is used for an automobile salvage yard. Further up from there, there's some private residences. The vast majority of the property that's alongside the western boundary of this road is owned by the defendant Lockport Township Park District, which is park district property, not state, but park district property, and for the most part is undeveloped. There's no ball fields or anything like that. It's flood plain, basically, and it's open to the public for whatever use they wish to make of it. But the argument with respect to Lockport Park District has been one of having ownership rights and maintenance rights by means of prescriptive easement because this strip of roadway is really the way by which they can gain access to the northern portions of this property, which is, like I said, a very long strip of property. Well, while you can gain access that way, it's not the exclusive way, so it's not one of these prescriptive, you know, it would be landlocked but for this access. There was a fine point with regards to the affidavits that they filed, and I would remind the court that it was, the trial court identified two affidavits as the basis for its decision. But I would submit to the court that on the affidavits submitted and on the one unsigned affidavit by Sue Michalopetz, the question of vehicle access to this property is not even addressed in any of the affidavits. Well, does he ever file an affidavit? What evidence do you have that this was property, your own evidence establishes this is basically state-owned property, IDNRO? Right, there's no question amongst any of us that the property is within that public reserve that is given over to the Department of Natural Resources for redevelopment. But there again, the question comes down to one of exclusive jurisdiction. And do you have any case that says that any municipality, park district has got a duty to maintain, let's assume it's a road, the township, municipality, park district has a duty to maintain roads inside a state reserve? No, I don't. What I do have, I believe, is the case that comes closest is probably a combination of two cases. There was the limestone development versus village of Lamont case, which basically is the only case I could find that really addressed property interests in this reserve that we are talking about. And it described the fact that ownership interests in the reserve could arise by way of prescriptive easement or possibly even common law dedication, which are of significance with regards to both of these municipal defendants. Quite the allegations in the amended complaint that was dismissed with prejudice and the judge said there's no reason to delay appeals. Judge Powers granted the 3048 language that the defendants requested, made the rather conclusory allegations that the defendant, in each case the respective municipality, owned the property in question. Dedication of the property, I'm sorry, thank you. The complaint did not state those, but those issues really weren't raised until I think at the first time they were suggested in terms of the sufficiency of them in their reply briefs or reply arguments that we filed in the trial court. And when the judge came in to announce his ruling, he said, I'm dismissing the complaint with prejudice based on these uncontroversial, on the uncontroverted affidavits of Sue Micklewitz and Mr. Greenan. They are uncontested at this point and the defendants had asked for the 3048 language and we are here. Well, there were no other, as a matter of procedure, I guess, there were no other, you had settled out with the other defendant at this stage? The one individual defendant has been settled out with basically for the policy limits in the case. So, in essence, Judge Powers ordered dismissal. Dismissed the entire. Everybody, so the 3048 language was probably redundant, right? Didn't need it. I didn't see the point of it. They wanted it and the judge didn't want to give me, we'd already filed an amended complaint. He didn't, he did not suggest or inquire as to an opportunity for leave to amend it, but pointed out the fact that based on these two affidavits, which I had objected to in the course of our arguments because I didn't feel that they were dispositive of the issues of a duty to maintain the roadway. All the affidavits say is we don't own it, we don't control it, we don't maintain it, which they may not have done it, but the question is a matter of law, which has to be decided by the court. Does it have a duty to maintain this roadway? Can an amended complaint change the fact that this is ID and our property? No. No question about it. But still under the law, even if it is, I think the village of Lamont case, the limestone development case, recognizes the fact that other ownership interests and therefore duties and responsibilities for maintenance of the property can arise even though the Department of Natural Resources owns the property, other entities may have responsibilities for doing maintenance. I think that's the significance of that case. There are some other cases that have described the fact that if a person does have a prescriptive easement, for instance, you do have a duty to maintain that easement. I know I've cited them in briefs and the names are not coming off the top of my head. I think it may have been Andrews v. City of Springfield. It was one of the cases that dealt with, I believe, the roadway that was dedicated to, that was established by reason of a reservoir that the city had purchased property to build. But the point is that if there is an ownership interest, whether it's by way of purchase or deed or by way of a prescriptive easement or some other interest in the property that arises by operation of the block, it would still carry with it perhaps a duty of maintenance, which is the whole issue in this case, the duty to maintain the roadway. Mr. Jarnes, I have a question about that. I guess all of your argument presupposes that this is a road, but it's never been dedicated. It's not no plat. I mean, how do you find that it meets the legal definition of a public roadway within the state of Illinois? I mean, it is apparently a path. It was a towpath at one time, but I don't see anything that indicates it was ever dedicated or platted, that there was ever any legal determination of it being a roadway. Well, there isn't a determination yet, and certainly it may be a question of some factual evidence produced at trial, and we're dealing with the dismissal with prejudice of a complaint before we've got to that point. But this roadway, the photographs that are in there, that I believe are in the record, depict the roadway as a gravel road. In turn, I agree with you it was never dedicated as such, but under the Illinois Highway Code, for instance, provisions of the code recognize the fact that a roadway may become a public roadway by continuous public use over a period of time, which if I remember correctly is a period of 15 years. And the responsibilities of the township in particular in dealing with the township road system under those provisions of the code spell out the fact that the township road commissioner has a duty to basically audit the roads within his area to determine, as I interpret the statute and as I would argue, whether a road such as this is being used by the public on a habitual basis would become part of a township road system. That's one of his responsibilities. I mean, by definition, state parks are used by the public, right? Correct. And so, you're going to convert paths in state parks to public roads that somebody other than the state, that's their property, has to maintain? Yeah, because it's got to be maintained by somebody and the Illinois Highway Code says that... How about the people that own it, the state? I'm sorry? How about the people that own it maintain it, like the state, the IDNR? The Highway Code deals with it because it vests the various roadways into four different road systems, state, county, municipal, and township. It's meant to apply to all roadways. The exceptions are, if there's exclusive jurisdiction given to a state agency for a roadway, then that department has a responsibility for it. But my argument has been that the Department of Natural Resources was never given exclusive jurisdiction for this roadway and that it then falls into the township. Counsel has two minutes. Let me ask you one quick thing. Any evidence that you came up with in this case that, for example, any of these defendants ever assumed a duty, in other words, actually went out and maintained it for a while, assumed a duty to do it? In the course of our arguments and proceedings today, there's been no affidavits to that effect. From my knowledge of the case, when I get to trial, is to show that there is evidence of one or two different municipalities doing maintenance service on this roadway in the form of snow removal. But that's nowhere in the record. It's still a matter of proof at this point. But my argument has been that in the various classifications of the road systems under the Highway Code, this road falls within the jurisdiction or the responsibility, I should say, of the township, Lockhart Township in this case. Thank you very much for your time. Thank you. My understanding is the affidavits have divided their time into three parts, five minutes each. So, Ms. Harrington, you're going to start. Thank you. Good afternoon. Please the court. Counsel. Good afternoon. My name's Alison Harrington. I represent Lockhart Township in this matter. Basically, for me, what this comes down to simply, and what our motions for all defendants have been, have fallen into two categories. It talks about the idea of whether there's an existence of a duty, and then there's an additional argument if there is actually determined there's a duty, whether there's an immunity that applies. My main argument that I've always brought in this case is the concept that there is no duty on behalf of Lockhart Township, and I would also say essentially for the remaining defendants who are in this case as well. Counsel brought up the issue of exclusive jurisdiction. And in looking at the case law, looking at the statutes, looking at the Highway Code, there's really no definition as to what exclusive jurisdiction is as to what I, at least what I saw. But if you look at the Canal Act and what really to me is what is at issue in this case, if you go through each of the sections of the Canal Act, you have the first section being the abandonment of the canal. As counsel agreed, there's no dispute in this case that the land involved is state-owned land. Under the Canal Act, then, the state, through the IDNR, is given various powers under the Canal Act to do as they believe is necessary or do what they choose with this land as long as it's in accordance with the concept behind the Canal Act, which is a historical preservation of the canal zones. So, for instance, under the Canal Act, we have Section 2, which allows for the master plan for development and management of the canal. That goes to the IDNR. Underneath the Canal Act, we have the disposition of revenues from sales. So if you have the canal, if the IDNR then uses this particular land in some fashion and it actually earns money, it goes to a state funds park fund. Under the Canal Act, it gives the IDNR the ability to sell, transfer, convey the lands to other agencies to further the purpose of the Canal Act. The Canal Act gives the power to the IDNR to create reservations and acquiring land abutting the canal, and that's exactly what happened in this case. What we have is the towpath falls within, on the plat that's in the record, falls within the 90-foot reserve created specifically under this section, 4510, of the reservation and acquisition of land abutting the canal. The whole portion of this towpath then is created by the specific ability of the IDNR under the Canal Act to create this type of roadway, or I'm sorry, I shouldn't use the term roadway. In addition, under the Canal Act, the 45-11 gives drainage flood control and other improvements. It gives the right to the IDNR to create improvements within these lands that fall under the canal zone. Lastly, 4514 states specifically under C, the abandonment of the canal as declared in this act shall not remove the lands referred to in this act from the jurisdiction, control, and powers transferred to and conferred upon the Department of Natural Resources over waterways and public waters of the state, and it goes on. But essentially, the Canal Act specifically states simply because the use of the canal as a route of commerce is being abandoned, the jurisdiction of this property remains within the Illinois Department of Natural Resources. I, in that regard, just to sum up very quickly, is I appreciate counsel's attempt at bringing this, in his, on the behalf of his client to bring this, I think, novel argument, but I believe the argument fails, and it fails for this reason. You cannot simply argue, my client in particular, is a catch-all for maintenance of a roadway when we have absolutely no notice of this. If you look at the Tunk case, which all defendants cited, Tunk talks about you can have maintenance jurisdiction if there's an intergovernmental agreement. There's no intergovernmental agreement here. The idea that plaintiff's counsel is asking us to do here is to simply impose liability amongst these defendants without there being an agreement to do so, and this is state property. This is state land, and it falls within their jurisdiction, and it falls within their maintenance jurisdiction. Thank you very much. Thank you, Ms. Conanty. Mr. Lutrovato? Anthony Lutrovato on behalf of the city of Lockport. The issue that I'd like to address specifically with the city is whether the city owes the plaintiff a duty of care. The allegations against the city are the same allegations against the other municipal defendants, and there's only two, that they either own and or maintain this alleged roadway in question. There have been three affidavits submitted. All the affidavits point to the fact that this property or road is owned by the state, and there are a number of concessions made by the plaintiff in the record. Concerning this, of course, Mr. Jarz has conceded that the Department of Natural Resources owns this parcel of land. Also, Mr. Jarz has conceded that the road has not been a dedicated city street, and that the further facts set forth in Mike Greenan's affidavit, who has been with the city for 20 years, indicates that the city has never dedicated this roadway, nor has it ever performed any repairs or maintenance on it during the time that he has been with the city. So the only allegations are that the city owns it and or maintains it, and it's actually been refuted by the concessions made by the plaintiff that the IDNR owns the parcel, and also refuted by Mr. Greenan's affidavit. I think also the Illinois-Michigan Canal Act specifically, and I think Council for the Township talked about it a little bit, but I think specifically section 4514C really answers all the questions with respect to duty in this case. And in 4514C, it talks about the lands being conferred to the Department of Natural Resources, and the lands are subject to the powers, duties, and responsibilities of that department, undiminished by declaration of abandonment, until the lands or property are disposed of by the department. And here it's clear there's no evidence that they've ever been disposed of by the department, no evidence that it's ever been sold by the department, and there's no evidence of any agreement between the department and any of the municipalities to have joint or concurrent maintenance jurisdiction over this roadway or this parcel of land. Council talks about what evidence he may or would like to introduce at trial, and the possibility of filing an amended complaint. Well, number one, no request to file an amended complaint was ever made before the trial court. There was never any motion filed by a plaintiff after the defendants filed their motion to dismiss. The motion to dismiss was filed in July of 08. It was briefed, and it was initially set for hearing on October 23 of 2008. Subsequently, it was continued five more times, and on none of those occasions did plaintiff's counsel file a motion seeking leave to file yet another amended complaint, and nor during any of those continuances did plaintiff's counsel file a 191B affidavit setting forth the need to take the depositions of any of the affidavits or setting forth the need to even depose someone from the state of Illinois. If plaintiff believes that there's some concurrent jurisdiction to repair this road, he could have filed a 191B affidavit to depose someone from the Department of Natural Resources to establish those facts for him. So, in the end, plaintiff had plenty of opportunity. Like I said, the motions were initially filed in July of 08. Judgment on these motions was not entered until May 6 of 09, and at no time during that period of time was an amended complaint attempted to be filed. In conclusion, I think there's three cases that support the finding that the city owes the plaintiff no duty, and that is they're referred to in the city's brief. It's the Tunk case, Dixon, and Nicholson, and in all of those cases, we had state roadways or state highways running through a municipality, and in Tunk, there was a car accident on the state highway, and Tunk sued. The county and the municipality and the ruling by the Court of Review was that it's the state's responsibility, and in Dixon, the plaintiff fell on a curb along Pulaski Road within the municipal limits of the city of Chicago. The curb was part of Pulaski Road, which is a state highway, and there, the Court of Review again held that the city owed the plaintiff no duty of care. And the same thing with Nicholson. In Nicholson, the plaintiff fell on the sidewalk adjacent to Dixie Highway and sued the city of Danville. Dixie Highway was a state road, and as a result, there was no duty owed by the municipality, and the Court of Review again affirmed judgment in favor of the municipality. Your Honors, I thank you very much for your time. Any questions? No, apparently not. Thank you, Mr. Retrovato. Mr. Dutton, good afternoon. Good afternoon. Thank you very much. Counsel? My name is Ed Dutton. I represent the Lockport Township Park District, and I feel somewhat like almost the external tourist here. I've addressed the issues a little differently than both plaintiff's counsel and then the codefendants, and in part because I'm a park district. I didn't spend time worrying about the highway code provisions and all of those things because the plaintiff isn't arguing those against me. What the plaintiff is arguing against me is a simple, straightforward theory. It's in the amendment complaint that says the Lockport Township Park District owned or maintained Canal Road. That's it. I filed pursuant to 2619A9, I filed my affidavit supported by photographs, supported by a plat, which established in fact that Canal Road is completely within the 90-foot reserve and is owned by the state of Illinois. Plaintiff's counsel has conceded that, both in the trial court and in his appellate brief in pages 9 and 15. That was the theory against me. I'm done. What the plaintiff then argued, and never pleaded, was that somehow there might be an easement that would not only be in favor of the park district and one we didn't know about, but would also impose upon us a maintenance obligation. And as plaintiff's counsel readily admitted in response to Justice Schmidt's question, is there any case law that supports that? No, there's not. Plaintiff's counsel owned up to that. I'm not aware of any. And from a public policy standpoint, that makes perfect sense. Because I can't think of a private parcel of land anywhere in the state that isn't served by a public roadway in one way or another, and most often exclusively. Route 23, for example, the number of businesses that line Route 23 gain access to their parcel strictly because and exclusively because of Route 23. And if plaintiff's counsel's argument is correct, every one of those property owners better go out and buy some salt trucks, because we've all become obligated to maintain the state roadway. So for those reasons, from a duty standpoint, and I've cited Dodd, and I've cited Sweatt v. Algonquin, different case law from what the co-defendants have cited. But from a duty standpoint, there's no case that has imposed a maintenance obligation upon an adjoining landowner to come in and maintain an adjacent state roadway. The second issue setting aside duty is the immunity issue. I'm not sure any of the other defendants have brought that up, but I do know that it would apply to all of the defendants equally. I've cited section 2-105 of the Tort Immunity Act, which says simply this. That a local public entity has no duty and slash or is absolutely immune from liability. They're two sides of the same coin. For any failure to inspect any property owned by another. And 3-101 of the Tort Immunity Act defines property of a local public entity to mean property that a local public entity owns or leases. That's it. So, when you take the plaintiff's allegations that the park district had a duty to inspect, which you'll find the word inspect in the plaintiff's complaint. A duty to inspect the towpath canal road. 2-105 says even if such a duty existed somewhere, the park district would be absolutely immune from liability for any failure to inspect property owned by another here in the state of Illinois. I cited three cases for that. I don't believe the plaintiff has responded either in the trial court or before the appellate court to any of those cases or even to the 2-105 argument. So, I'm back to plaintiff can't state a duty, both under law and for policy reasons. Even if plaintiff could, the park district would have absolute immunity from liability in any event under 2-105. The cases I cited were Rasher v. Champaign, also dealing with a city having to allegedly inspect property owned by another public entity. There it was, the county of Champaign, their housing authority. I also cited the two recent cases from the first district, Ware and Boulder v. City of Chicago, which dealt with the porch collapse cases. Those cases confirmed two things. One, 2-105 says what it means. Absolute immunity for any failure to inspect property owned by another. There it was, private property, porches. And the second part is, it is absolute. There's not even an exception for Wolfland-Wanton. That becomes important only because when the plaintiff says, well, I should have been given an opportunity to amend, he never requested it. But even if he had requested it, no amendment could have cured his complaint. The reason why? No duty under law. That's a legal issue. And there would be absolute immunity in any event. So unless the court has any questions for me whatsoever, I've covered what I need to cover. Okay. No questions. Thank you very, very much. Mr. Gatton. Mr. Jarrett, anything to follow up? Thank you. In reply to Lockport Township's arguments, I would point out with regards to the question of the jurisdiction of the Illinois Department of Natural Resources, the provisions of the Illinois-Michigan Canal Development Act, which I do believe demonstrate that there is no exclusive jurisdiction for that agency, as I've always argued. There's two sections that come into play. It's 615 ILCS 45-2 and 615 ILCS 45-14, particularly in that section, subsection B. In the first section, 45-2, that section spells out the fact that the Department of Natural Resources, in cooperation with other state, local, or federal agencies, shall prepare the master plan for redeveloping this canal act for the recreational purposes and for the historical purposes. In other words, it's supposed to use its jurisdiction in concurrence with other municipalities, other agencies. It's not meant to be exclusive. It's meant, and by legislative edict, it was told to do it in conjunction with other entities for this purpose. Well, Paul, just aren't they arguing that, well, I guess I forget what they're arguing. Are there any plans or any documents eliciting some kind of agreement between the IDNR and any of these defendants to work together to maintain the roadway? Maintain it. Or any other part of that canal zone that's relevant at least in that area? In that area, there are leases with other entities and I believe also the Will County Forest Preserve District for certain areas. It may be, but not with regards to the area of this roadway. The accident occurred. Yeah. Lockport Township Park District has some sort of agreement, but in terms of where this accident happened, half a mile south of Division Street, no. We could not find a lease or a deed or conveyance of any sort that mentioned that particular or governed that particular location, no. But it's important for my primary argument because the Highway Code applies to all roadways in the state of Illinois, unless there's an exclusive jurisdiction, which there's not. And then it does fall into a catch-all as Lockport Township claims. They aren't a catch-all for all these, but they are. There is a provision in the Highway Code that makes them a catch-all. And there's three cases at the appellate level that have basically said if it's not state, county, or municipal system, then it is in the township. And it doesn't require those. The commissioner has a responsibility to do the survey. The provision's in the act. So I would say that it's clearly, and I already thought it was, their responsibility. As far as responding to Mr. Retrovato's arguments, the affidavits on which the decision was based do not and cannot establish the question of duty to maintain. The fact that they attempt to testify to the fact that we don't own it, we don't control it, is one thing, but they cannot be interpreted to define the duty. With regards to Mr. Dutton in the Park District, the private property owner's ownership of property adjacent to a state highway is not addressing the issues raised here, at least as far as his claim of prescriptive easement, where the only means of access to their property is here, and there has been no maintenance done by anybody else. Do they also have a duty? The duty of one person to maintain it is not necessarily exclusive. If there is nobody else doing it, then the other person may have a duty, simply by reason of his easement, to do the maintenance. One minute. Also with regards to the Tort Immunity Act, we'll note that the complaint, and the amended complaint, was very carefully drafted to address the description of this hazard as deterioration in the roadway caused by weathering conditions, because under the Elementary Tort Immunity Act, municipalities do have responsibility for maintaining their roadways to prevent deterioration of roadway services themselves. I cited a City of Ottawa case in my brief that deals with that for me, versus City of Ottawa, I believe it is, a motorcycle accident, where basically a cop killed a motorcyclist, and the city was found responsible. Thank you very much for your attention. We thank you for your arguments this afternoon. We'll take this matter under investigation, and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel exchange.